IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DLB ENTERPRISES LLC, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO.  2:22-cv-00046

KANAWHA STONE COMPANY, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff and Counterclaim Defendant DLB Enterprises LLC's ("DLB Enterprises") Motion to Dismiss Counts I and IV of Kanawha Stone Company, Inc.'s Counterclaim and Third-Party Complaint for Failure to State a Claim. (ECF No. 22.) For the reasons more fully explained below, the motion is **GRANTED**.

        I.    BACKGROUND

This dispute arises out of a project to construct nearly four miles of roadway and two bridges on the King Coal Highway in Mercer County, West Virginia (the "Project") for the West Virginia Division of Highways. (*Id.* at 2.) The following allegations are drawn from the Counterclaim, (ECF No. 11), and the Complaint, where noted. (ECF No. 1.)

In October of 2018, the West Virginia Department of Transportation, Division of Highways ("DOH") awarded Defendant and Counterclaim Plaintiff Kanawha Stone Company, Inc. ("Kanawha Stone"), as general contractor, an approximately $57.5 million contract (the "Prime Contract"). (ECF No. 11 at ¶ 8.) The Prime Contract required the construction of a

nearly four-mile section of the King Coal Highway from John Nash Boulevard to Airport Road in Mercer County, including the construction of two bridges, on or before November 19, 2021. (*Id.* at ¶¶ 8, 12.)

Then, in September of 2019, Kanawha Stone entered a subcontract with McCrossin Foundations, LLC ("McCrossin Foundations") for the foundational and drilling work related to the construction of supporting caissons for the two bridges required on the Project (the "McCrossin Subcontract"). (*Id.* at ¶¶ 14–15.) The total amount of the McCrossin Subcontract was $614,540.00. (*Id.* at ¶ 14.) On September 19, 2019, Kanawha Stone entered a subcontract with DLB Enterprises for the construction of the two bridges, including the supply and installation of rebar for the supporting caissons (the "DLB Subcontract"). (*Id.* at ¶¶ 17–18.) The total amount of the DLB Subcontract was $12,500,397.92. (*Id.* at ¶ 17.)

Under the DLB Subcontract, DLB Enterprises was "to be bound to [Kanawha Stone] by the same terms and conditions as [Kanawha Stone] is bound to The West Virginia Division of Highways," and DLB Enterprises further agreed to complete its work "in strict accordance" with the documents prepared by the West Virginia Division of Highways. (*Id.* at ¶ 19.) The DLB Subcontract additionally specified certain events of default, including failing to supply sufficient skilled workers, disregard of instructions by Kanawha Stone, failure to timely commence work, and failing to perform its contractual obligations, among others. (*Id.* at ¶ 20.) Upon a written notice of default, the DLB Subcontract afforded DLB Enterprises three business days in which to cure the default. (*Id.* at ¶ 21.) If DLB Enterprises failed to cure the alleged default, the DLB Subcontract allowed Kanawha Stone to withhold payment, self-perform, or terminate the subcontract. (*Id.* at ¶ 22.)

2

On January 18, 2019, DLB Enterprises purchased a performance bond (the "Performance Bond") from Hartford Fire Insurance Company ("Hartford") that insured the entire DLB Subcontract amount. (*Id.* at ¶ 24.) The Performance Bond identified DLB Enterprises as the Principal, Kanawha Stone as the Obligee, and Hartford as the Surety. (*Id.* at ¶¶ 25–27.) Under the terms of the Performance Bond, DLB Enterprises agreed to "promptly and faithfully perform" all duties under the DLB Subcontract. (*Id.* at ¶ 28.) Under the Performance Bond, Hartford agreed to "promptly remedy" any default on the DLB Subcontract, so long as Hartford received reasonable notice and Kanawha Stone agreed to pay any remaining balance on the Subcontract to Hartford to complete the Project. (*Id.* at ¶ 29.)

Kanawha Stone alleges that "a litany of issues arose" regarding DLB Enterprises' work on the Project, including deficient workmanship, substantial delay, unsafe working conditions, "[d]eviation from the Project's critical path . . . [and] plans and specifications," a failure to remediate deficient work, failure to timely cure "numerous scheduling deficiencies," and failure to provide an adequate remediation plan. (*Id.* at ¶¶ 30–31.) These alleged problems lead to Kanawha Stone declaring DLB Enterprises to be in default on March 22, 2021. (*Id.* at ¶ 33.) In declaring that DLB Enterprises was in default, Kanawha Stone provided notice to Hartford. (*Id.* at ¶ 39.)

DLB Enterprises, in response, "asserted McCrossin caused the delays in workmanship particularly the issues with drilled shafts and concrete in the caissons."[1] (*Id.* at ¶ 35.) Regardless, Kanawha Stone alleges that DLB Enterprises failed to cure the default within three

---

[1] Kanawha Stone alleges that McCrossin "deviated from the plans and specifications in performing certain foundational work," thereby breaching the McCrossin Subcontract. (ECF No. 11 at ¶¶ 37–38.) Kanawha Stone has filed a third-party complaint against McCrossin, (*see* ECF No. 11), but McCrossin has not joined in the instant motion.

3

business days of its notice. (*Id.* at ¶ 40.) Notwithstanding the declaration of default, Kanawha Stone "attempted to work with DLB [Enterprises], McCrossin and Hartford to remedy performance issues on the Project." (*Id.* at ¶ 41.)

However, on September 10, 2021, Kanawha Stone received notice from the West Virginia DOH of "numerous documented instances of unsatisfactory work as the result of poor workmanship and/or methods by . . . subcontractor DLB [Enterprises]." (*Id.* at ¶ 43.) Subsequently, on September 13, Kanawha Stone "issued a second and continuing notice of default" to DLB Enterprises. (*Id.* at ¶ 44.) Along with this notice, Kanawha Stone also provided a "spreadsheet documenting nearly fifty (50) instances of specific unsatisfactory work on the two bridges, as well as inspection and safety concerns." (*Id.* at ¶ 45.) Like the first notice, Kanawha Stone contemporaneously provided notice to Hartford of the second and continued default. (*Id.* at ¶ 46.)

Again, Kanawha Stone alleges that DLB Enterprises failed to cure the default within three business days. (*Id.* at ¶ 47.) Thus, Kanawha Stone issued a third notice of default on September 27, 2021. (*Id.* at ¶ 48.) Again, and like with the prior notices, Kanawha Stone also provided Hartford with notice of this third default. (*Id.* at ¶ 49.) Kanawha Stone alleges that DLB Enterprises again failed to remedy the default within three business days, and on October 11, 2021, Kanawha Stone issued its fourth and final notice of default to DLB Enterprises. (*Id.* at ¶ 51.) As before, Kanawha Stone also provided a list of more than 40 instances of "unsatisfactory work" that it had received from the DOH. (*Id.* at ¶ 52.) Kanawha Stone provided contemporaneous notice to Hartford, just as before. (*Id.* at ¶ 53.) And, just as before, Kanawha Stone alleges that DLB Enterprises failed to cure the default within the prescribed time. (*Id.* at ¶ 54.)

Accordingly, Kanawha Stone terminated the DLB Subcontract on October 15, 2021. (*Id.* at ¶ 56.) Contemporaneous with the termination, Kanawha Stone submitted a claim to Hartford under the Performance Bond, wherein Kanawha Stone agreed to credit the balance of the DLB Subcontract to Hartford upon acceptance of the claim. (*Id.* at ¶¶ 57–58.) Thereafter, on October 22, Hartford acknowledged Kanawha Stone's claim and its receipt of "numerous project materials" that had been provided by Kanawha Stone following the initial notice of default. (*Id.* at ¶ 62.) At some point in time, Hartford made a request of Kanawha Stone for additional information, which Kanawha Stone provided on January 11, 2022. (*Id.* at ¶ 63.) On February 11, 2022, Hartford denied Kanawha Stone's claim under the Performance Bond. (*Id.* at 66.) As a result of the foregoing allegations, Kanawha Stone is "past the substantial completion deadline in the Prime Contract," and has been assessed liquidated damages, which continue to accumulate daily. (*Id.* at ¶¶ 67–68.)

Kanawha Stone filed its counterclaim and third-party complaint on February 22, 2022, in which it asserts seven claims for relief. (*See* ECF No. 11.) Count I asserts a cause of action for declaratory judgment against McCrossin, DLB Enterprises, and Hartford. (*Id.* at 9–10.) Count II asserts a claim for breach of contract against DLB Enterprises. (*Id.* at 10–11.) Count III asserts a cause of action for breach of contract against McCrossin. (*Id.* at 11–12.) Count IV asserts a cause of action for tortious interference against DLB Enterprises. (*Id.* at 12.) Count V asserts a cause of action for breach of performance bond against Hartford. (*Id.* at 12–13.) Count VI asserts a cause of action for violations of the West Virginia Unfair Trade Practices Act. (*Id.* at 13.) Finally, Count VII asserts a cause of action for common law bad faith against Hartford. (*Id.* at 14.)

DLB Enterprises filed the instant motion to dismiss on March 15, 2022. (ECF No. 23.) Kanawha Stone timely responded in opposition on March 29, 2022. (ECF No. 26.) DLB Enterprises then filed its reply on April 5, 2022. (ECF No. 28.) With briefing on this motion complete, it is ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

DLB Enterprises first argues for the dismissal of the claim for tortious interference, asserting that Kanawha Stone has failed to plead the essential elements of the claim. Next, DLB Enterprises argues that the declaratory judgment claim is "duplicative" of the other counterclaims asserted and should similarly be dismissed. The Court will take up each argument in turn.

#### A. *Tortious Interference*

In West Virginia, a party may be held liable for the intentional interference with a contractual relationship if a plaintiff can show the following elements:

(1) existence of a contractual or business relationship or expectancy;

(2) an intentional act of interference by a party outside that relationship or expectancy;

(3) proof that the interference caused the harm sustained; and

(4) damages.

Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166, 167 (1983). Moreover, a defendant cannot be "liable for interference that is negligent rather than intentional[.]" *Id.*

In the case at hand, DLB Enterprises argues that Kanawha Stone has failed to plead two of the above elements, and thus has failed to state a claim for tortious interference. Specifically, DLB Enterprises asserts that Kanawha Stone has failed to allege that DLB Enterprises acted intentionally, stating that "[t]here is nothing to suggest that [it] acted with the intention of damaging [Kanawha Stone's] contractual or business relationship" with the West Virginia DOH. (ECF No. 23 at 5.) DLB Enterprises identifies the perceived absurdity of such a claim, arguing that "[i]t is inconceivable to think that [it] would intentionally breach its subcontract with [Kanawha Stone] and expose itself to hundreds of thousands or even millions of dollars in potential

7

damages as well as trigger a claim against its performance bond surety . . ., all for the purpose of damaging [Kanawha Stone's] relationship" with the DOH. (*Id.*) DLB Enterprises further argues that Kanawha Stone has failed to allege damages from tortious interference, instead making only the conclusory allegation that DLB Enterprises harmed its reputation and that it "suffered, and continues to suffer, damages." (*Id.* at 6 (quoting ECF No. 11 at ¶ 101.))

In response, Kanawha Stone proclaims that it "absolutely" alleged that DLB Enterprises intentionally interfered with its business relationship with the DOH. (ECF No. 26 at 5.) In support of this assertion, Kanawha Stone identifies correspondence from the DOH, wherein the DOH advised Kanawha Stone that personnel from DLB Enterprises were "refusing or ignoring orders" and that "[c]ontinued poor performance . . . may result in revocation of [Kanawha Stone's] Contractor Pre-Qualification status[.]" (*Id.* (quoting ECF No. 11-8 at 3.) Further, Kanawha Stone maintains that it "alerted" DLB Enterprises to these concerns, but that DLB Enterprises "deliberately and intentionally disregarded" those concerns. (*Id.* (citing ECF No. 11 at ¶¶ 43–44, 47, 52, 54.))

A review of the allegations in Kanawha Stone's Counterclaim reveals that these allegations are not sufficient to maintain a claim for tortious interference. In paragraph 31, Kanawha Stone identifies several issues with the timeliness and quality of DLB Enterprises' work on the Project, including deficient workmanship; substantial delay; deviation from the Project's critical path; deviation from plans and specifications; failure to remedy deficient work; failure to timely cure scheduling discrepancies; and failure to provide an adequate remediation plan. (ECF No. 11 at ¶ 31.) Similarly, in paragraph 87, Kanawha Stone identifies those same issues in arguing that DLB Enterprises breached the DLB Subcontract. (*Id.* at ¶ 87.) Finally, Kanawha Stone alleges that

8

DLB Enterprises "intentionally interfered" with its relationship with the DOH through DLB Entrprises' repeated breaches of the DLB Subcontract.  (*Id.* at ¶ 99.)

What is missing from these allegations is intent.  *See, e.g.*, *Talbot 2002 Underwriting Capital Ltd v. Old White Charities, Inc.*, Civ. Action No. 5:15-cv-12542, 2016 WL 3162135 at *6 (S.D. W. Va. June 3, 2016) (finding that allegations of tortious interference were insufficient when plaintiff failed to show an inference that defendant sought to interfere with business relationship).  Notably, Kanawha Stone's allegation that DLB Enterprises "intentionally interfered" is a conclusion, such that it is properly disregarded at this stage.  *See Iqbal*, 552 U.S. at 679.  Stripped of these conclusory allegations, there is simply nothing in the Counterclaim that would show or allow the Court to infer that DLB Enterprises acted with the intent to interfere with Kanawha Stone's business relationship with the DOH.  *See United Bankshares, Inc. v. St. Paul Mercury Ins. Co.*, Civ. Action No. 6:10-cv-00188, 2010 WL 4630212 *7 (S.D. W. Va. Nov. 4, 2010) ("The plaintiffs have not pleaded a factual predicate in support of their allegation that the defendants tortiously interfered with the contract[.]")  For example, Kanawha Stone references paragraphs 47 and 54 of its Counterclaim to argue that DLB Enterprises "deliberately and intentionally disregarded" Kanawha Stone's and the DOH's concerns on the Project.  (ECF No. 26 at 6.)  However, all these allegations show is that DLB Enterprises did not remedy the concerns within three business days.  (*See* ECF No. 11 at ¶ 47 ("Like the first notice of default, DLB failed to timely remedy its deficient performance within three (3) business days."); ¶ 54 ("Like before, DLB failed to timely cure.").)  There is no allegation of intent, nor is there any allegation from which the Court could reasonably infer intent.  As such, Kanawha Stone has failed to plead a claim for

9

tortious interference. Accordingly, DLB Enterprises' motion is **GRANTED** as to Count IV of the Counterclaim.[2]

Furthermore, as to Kanawha Stone's request to amend the counterclaim, the request shall be and hereby is **DENIED**. "[L]eave to amend should only be denied when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Notably, Kanawha Stone has neglected to direct the Court to any proposed amendment in its claim for tortious interference, and as the Court has already expressed sincere doubts about its ability to satisfy not one but two elements necessary to support such a claim, the Court believes that any amendment on a tortious interference claim would be futile. *See, e.g.*, *Miller v. Maryland Dep't of Nat. Resources*, 813 F. App'x 869, 880 (4th Cir. 2020) ("[I]f an amended complaint would not survive a motion to dismiss for failure to state a claim, it is properly denied for frivolity.")

But even more importantly, Kanawha Stone in making its request for leave to amend has neglected the requirements of Federal Rule of Civil Procedure 7(b), governing the form of motions. Rule 7(b) requires that a request of the Court must be made by motion; the motion must be in writing, unless made during a hearing or trial; the motion must state with particularity the grounds for seeking the order; and the motion must state the relief sought. To begin, Kanawha Stone has

---

[2] Additionally, DLB Enterprises asserts that Kanawha Stone has failed to adequately plead that it suffered damages from tortious interference. (ECF No. 23 at 5–6.) DLB Enterprises argues that Kanawha Stone has only alleged liquidated damages, which flow from a typical breach-of-contract claim, and referenced a letter in which the DOH stated that Kanawha Stone's "continued poor performance . . . **may** result in revocation" of their contract or pre-qualification status with the State of West Virginia. (ECF No. 28 at 4 (emphasis added).) Ultimately, while the Court is skeptical of Kanawha Stone's assertion that it properly plead actual—as opposed to speculative—damages stemming from tortious interference, the Court need not decide that here, as the failure to plead intent is dispositive of the claim.

not made a motion with the Court, but instead requests leave to amend in lieu of dismissal. *See Montgomery v. Maryland*, 72 Fed. App'x 17, 20 (4th Cir. 2003) ("Montgomery failed to make a written motion to amend in the district court; her sentence at the end of a memorandum opposing a motion to dismiss does not satisfy the requirements of Fed. R. Civ. P. 7(b), governing the form of motions.") But further, the only stated ground Kanawha Stone offers the Court for its request is that this action is in its "infancy." (ECF No. 26 at 8.) There is no proposed amendment, nor even the slightest indication as to what form any amendment might take. Under such a bare request, the Court declines to permit amendment in lieu of dismissal. *Montgomery*, 72 Fed. App'x at 20. *See also Ramsgate Court Townhome Ass'n. v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) ("Ramsgate never filed a motion to amend, nor did it provide the district court with a proposed amended complaint. As a consequence, the court had nothing upon which to exercise its discretion."); *Calderon v. Kansas Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999) ("Ms. Calderon's single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, did not rise to the level of a motion for leave to amend."); *Martin v. A. Celli Intern., Inc.*, C/A No. 7:14-cv-00095-GRA, 2014 WL 1912064 at *6 (D.S.C. 2014) ("Plaintiff's attempt to prevent dismissal by a cursory request to possibly amend the Complaint if the need should arise is not sufficient and does not require this Court to consider whether to allow leave to amend.")

      DLB Enterprises motion is **GRANTED** as to Count IV of the Counterclaim. Count IV, a claim for tortious interference, is **DISMISSED**.

B. *Declaratory Judgment*

Next, DLB Enterprises argues that Count I of the Counterclaim, which asserts a cause of action for declaratory judgment, should be dismissed as duplicative. (ECF No. 23 at 6.) DLB Enterprises asserts that declaratory judgment will not offer any clarity on any issue now before the Court, but rather resolution of the various causes of actions will. (*Id.* at 7.)

In response, Kanawha Stone argues that its declaratory judgment claim is proper, as it "concerns [DLB Enterprises'] default and its impact on Hartford's outstanding Performance Bond obligations." (ECF No. 26 at 7.) Because the "damages have not fully accrued, and the Project is ongoing and incomplete," Kanawha Stone maintains that that Hartford owes an "obligation to either pay the damages . . . or correct the Project." (*Id.*) Accordingly, Kanawha Stone asserts that its declaratory claim is "viable." (*Id.*)

Title 28, § 2201 of the United States Code establishes that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" Otherwise known as the Declaratory Judgment Act, § 2201 is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). The Supreme Court of the United States has stated that "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). Accordingly, a declaratory judgment is "unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Trull v. Smolka,* No. 3:08cv460, 2008 WL 4279599 at *8 (E.D.Va. Sept. 18, 2008).

The Court turns now to the allegations in Count I of the Counterclaim. Among those allegations, Kanawha Stone alleges that McCrossin materially breached the McCrossin Subcontract, (ECF No. 11 at ¶ 74); that DLB Enterprises materially breached the DLB Subcontract, (*id.* at ¶ 75); that DLB Enterprises failed to timely cure its defaults, (*id.* at ¶ 77); that Kanawha Stone terminated the DLB Subcontract, (*id.* at ¶ 78); that Kanawha Stone made a claim to Hartford under the Performance Bond, (*id.* at ¶ 79); and that Hartford materially breached its obligations under the Performance Bond when it wrongfully denied Kanawha Stone's claim, (*id.* at ¶¶ 81–82). Based on these allegations, Kanawha Stone requests that the Court enter an order declaring that McCrossin materially breached the McCrossin Subcontract; DLB Enterprises materially breached the DLB Subcontract; Kanawha Stone properly terminated the DLB Subcontract; and Hartford is obligated to accept and pay Kanawha Stone's Performance Bond claim. (*Id.* at ¶ 83.)

However, Kanawha Stone has also made the following additional claims based on the same allegations: Count II asserts a claim for breach of contract against DLB Enterprises; Count III asserts a claim for breach of contract against McCrossin; Count V asserts a breach of performance bond claim against Hartford; Count VI asserts a claim for violations of the Uniform Trade Practices Act against Hartford; and Count II asserts a claim for common law bad faith against Hartford.[3]

---

[3] The Court takes this opportunity to note that DLB Enterprises has also asserted a breach of contract claim against Kanawha Stone, (ECF No. 1 at 14), and an action to recover under the Performance Bond, alleging a failure to pay by

(*Id.* at 10–14.) Seemingly, then, resolution of all these various claims would also necessarily resolve the request for declaratory relief.

Considering the above, the Court finds helpful the reasoning of the United States District Court for the Eastern District of Virginia in *Hanback v. DRHI, Inc.*, 94 F.Supp.3d 753, 759 (E.D.Va. 2015). There, the court dismissed an action for declaratory judgment with respect to a breach of contract, reasoning as follows:

> Thus, as the Complaint plainly reflects, the alleged breach of contract and damages in this case have already occurred. It follows that a declaratory judgment is inappropriate and unwarranted in this case because such a declaration would not clarify uncertain legal relations between the parties in an ongoing relationship, nor would it provide the parties with any guidance for future conduct[.]

*Id.* at 759. *See also NY @ Route 9 Limited Partnership v. Essroc Cement Corp.*, Civ. Action No. 3:16-CV-63, 2016 WL 4014703 at *7 (N.D.W. Va, July 26, 2016) ("Plaintiff's declaratory judgment claim is improper because it seeks an order concerning conduct that allegedly has already occurred and damages that allegedly have already accrued. Under these circumstances, a declaratory judgment would neither 'clarify uncertain legal relations between the parties' nor would it 'provide the parties with any guidance for future conduct.'"); *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F.Supp.2d 602, 615 (E.D.Va. 2008) ("Here, because Hipage has already repudiated the Service Agreement, there is no guidance that this Court can offer to steer Hipage's conduct away from a breach of contract. . . . [T]he damages arising from Hipage's business dealings with Access2Go have already accrued, and thus, the action for declaratory judgment is untimely.")

---

Kanawha Stone, (*id.* at 15). Similarly, McCrossin has filed its own breach of contract counterclaim against Kanawha Stone, alleging that Kanawha Stone breached the McCrossin Subcontract by failing to pay McCrossin. (ECF No. 29 at 17.)

14

Kanawha Stone has already terminated both the McCrossin and DLB Subcontracts. It has further already made a claim under the Performance Bond, which it alleges was wrongfully denied. Furthermore, DLB Enterprises initiated this action by bringing a breach of contract claim against Kanawha Stone, the basis of which is that Kanawha Stone's termination of the Subcontract was wrongful. Finally, McCrossin has brought its own counterclaim for breach of contract against Kanawha Stone. Despite Kanawha Stone's assertions to the contrary, the wrongs here have already been committed and the damages accrued, as evidenced by the various causes of action asserted, rendering declaratory judgment inappropriate. Simply, a declaratory judgment by the Court will not "clarify uncertain legal relations between the parties" nor would it "provide the parties with any guidance for future conduct." *Hanback*, 94 F.Supp.3d at 759.

For the foregoing reasons, DLB Enterprises' motion is **GRANTED** as to Count I of the Counterclaim. Count I is hereby **DISMISSED**.

IV. *CONCLUSION*

For the reasons more fully explained above, Plaintiff and Counterclaim Defendant DLB Enterprises' Motion to Dismiss Counts I and IV of Kanawha Stone's Counterclaim and Third-Party Complaint for Failure to State a Claim, (ECF No. 22), is **GRANTED**. Counts I and IV of the Counterclaim, (ECF No. 11), are hereby **DISMISSED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 11, 2022

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

16