IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DLB ENTERPRISES LLC, et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO.   2:22-cv-00046

KANAWHA STONE COMPANY, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are competing motions.  The first motion is by Defendant and Counterclaimant/Third-Party Plaintiff Kanawha Stone Company, Inc. ("Kanawha Stone"), requesting the Court to confirm the arbitration award issued on April 18, 2025.  (ECF No. 145.)  The other motion is an opposing request by McCrossin Foundations, LLC ("McCrossin") seeking to vacate or modify the arbitration award.  (ECF No. 147.)  For the reasons that follow, the Court **GRANTS** Kanawha Stone's request and **DENIES** McCrossin's.

*I.*        BACKGROUND

This arbitration award is the result of a long pending, multi-party suit involving a contract to construct a portion of a highway and two bridges for the West Virginia Division of Highways ("DOH").  (*See* ECF No. 147 at 1.)  In October of 2018, the DOH awarded Kanawha Stone, as general contractor, an approximately $57.5 million contract (the "Prime Contract").  (ECF No. 11 at ¶ 8.)  The Prime Contract required the construction of a nearly four-mile section of the King

1

Coal Highway from John Nash Boulevard to Airport Road in Mercer County, including the construction of two bridges, on or before November 19, 2021. (*Id*. at ¶¶ 8, 12.)

As part of the project, in September of 2019, Kanawha Stone entered into a subcontract with McCrossin for the foundational and drilling work related to the construction of supporting caissons for the two bridges required on the Project (the "McCrossin Subcontract"). (*Id*. at ¶¶ 14–15.) Around that same time, Kanawha Stone also entered a subcontract with DLB Enterprises for the construction of the two bridges, including the supply and installation of rebar for the supporting caissons (the "DLB Subcontract"). (*Id*. at ¶¶ 17–18.)

The central issue in this case concerns a dispute over the construction of an allegedly defective caisson for one of the bridges. (*Id*. at ¶ 31.) In January 2020, McCrossin and DLB Enterprises installed the cage and concrete for the caisson at issue, which was the first caisson on Bridge 84. (ECF No. 150 at 4.) McCrossin drilled the caisson and DLB Enterprises installed the rebar cage pursuant to the DLB Subcontract. (*Id*.) However, DLB Enterprises allegedly failed to adequately secure the rebar cage during installation. (*Id*.) Nonetheless, McCrossin still proceeded to install the concrete. (*Id*.) The initial batch of concrete was rejected as too stiff, and although it was rejected and replaced, some of it entered the excavation, which allegedly led to voids or abnormalities at the base of the caisson. (*Id*.) Kanawha Stone claims that McCrossin never alerted it or the DOH about this issue. (*Id*.)

As a result, DOH rejected the caisson on the basis of alleged: (1) voids and abnormalities in the concrete; and (2) misalignment of the rebar. (*Id*. at 5.) In an effort to avoid the significant costs with the removal and replacement, Kanawha Stone, McCrossin and DLB Enterprises attempted to persuade the DOH to allow them to remediate the caisson. (*Id*.) Accordingly, on

March 11, 2020, McCrossin submitted its first remediation plan to address the voids. (*Id*.) The repair work pursuant to the remediation plan began in March 2021. (*Id*.) Subsequent testing and coring indicated that voids/abnormalities remained, which led to a second remediation plan. (*Id*.)

On August 12, 2021, the DOH issued a letter to Kanawha Stone that directed the caisson be removed and replaced. (*Id*. at 6.) Kanawha Stone forwarded the DOH's rejection letter to both McCrossin and DLB Enterprises. (*Id*.) McCrossin responded to the DOH letter, indicating that the DOH's position was "unreasonable and not consistent with generally accepted construction and engineering practice" and that filling cores with grout does not "degrade the reliability and future serviceability of the drilled shaft." (ECF No. 147 at 6.) A DOH representative responded with a description of other remediation tactics that McCrossin could undertake that would alleviate any concerns by the DOH about a loss of concrete. (*Id*. at 7.)

Kanawha Stone retained a separate replacement contractor to perform the removal and replacement work at its own costs. (*Id*.) As a result of the DOH's rejection of the caisson, Kanawha Stone sought to recover costs incurred to remove and replace the caisson on Bridge 84, that was installed by the subcontractors, DLB Enterprises and McCrossin. (*Id*. at 2.) Kanawha Stone also sought reimbursement for liquidated damages from DLB Enterprises and/or McCrossin, which had been assessed by the Project owner, the DOH. (*Id*.)

Consequently, on May 22, 2023, Kanawha Stone, McCrossin and DLB Enterprises entered into an Arbitration Agreement to arbitrate their dispute in lieu of litigation. (ECF No. 150 at 10.) The Arbitration Agreement acknowledged the pending Civil Action before this Court but stated, "the Parties desire to resolve all contractual claims, disputes, or other matters in controversy arising out of or related to the Project" through binding arbitration. (*Id*. at 11.) Under the Arbitration

Agreement, the Parties agreed that the arbitration would proceed "pursuant to the Regular Track Procedures as set forth in the Construction Industry Arbitration Rules and Mediation Procedures by the American Arbitration Association . . . ." (*Id*.)  The Arbitration Agreement required the Panel to "make written factual findings and legal conclusions in its attribution award." (*Id*.)

Accordingly, over the course of twenty-three non-consecutive days, the Parties participated in arbitration. (*Id*. at 2.)  The Panel heard from twenty-seven witnesses and considered nearly six hundred exhibits. (*Id*.)  On April 18, 2025, the Panel rendered its award. (*Id*.)  The Panel concluded that McCrossin breached its Subcontract with Kanawha Stone and awarded damages to Kanawha Stone from both McCrossin and DLB Enterprises. (*Id*.)  The net award granted to Kanawha Stone was $911,742.05 from DLB Enterprises and $926,421.65 from McCrossin. (*Id*.)

On June 6, 2025, Kanawha Stone asked this Court to confirm the award determined by the Arbitrator. (*See generally* ECF No. 145.)  McCrossin filed a response. (ECF No. 148.)  Kanawha Stone filed a reply. (ECF No. 149.)  McCrossin countered with a request to vacate or modify the arbitration award on July 1, 2025. (ECF No. 147.)  Kanawha Stone filed a response. (ECF No. 150.)  McCrossin filed a reply. (ECF No. 151.)  Both motions are now ripe for adjudication.

## II.    LEGAL STANDARD

The power of a federal court to review an arbitration award "is extremely limited, and is, in fact, among the narrowest known to the law." *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008).  The Court must begin "with the presumption that the Court should confirm the arbitration award." *Wichard v. Suggs*, 95 F. Supp. 3d 935, 944 (E.D. Va. 2015) (citing *Apex Plumbing Supply, Inc. v. U.S. Supply Co*., 142 F.3d 188, 193 (4th Cir. 1998)).

4

Such presumption is necessary, for "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply*, 142 F.3d at 193.

As such, "[e]very presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac Railroad Co. v. Transportation Communications International Union*, 973 F.2d 276, 278 (4th Cir. 1992). The Court's role is to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *U.S. Postal Service v. American Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000).

Nevertheless, the Court may vacate the arbitration award under one of the statutory grounds outlined in the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 10. The Court may vacate the award if the complaining party demonstrates one of the following scenarios:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Given the strong presumption in favor of the award, the party requesting vacation "sustain[s] the heavy burden of showing one of the grounds specified in the Federal Arbitration Act" is met. *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010).

### III.   DISCUSSION

A. *The Rejected Caissons*

The Court will start with the issue about the rejected caissons. In support of vacating the award, McCrossin claims that the damages stemming from the rejected caissons were based on the arbitrators' "own notion of economic justice," and not the contract. (ECF No. 147 at 16.) The Panel found that the DOH improperly rejected the caisson submitted by Kanawha Stone and manufactured by McCrossin. (*Id*. at 7.) However, the Panel determined that, under the McCrossin Subcontract, it was required to submit a claim for reimbursement if it believed further remediation was necessary. (*Id*.) McCrossin argues that this was a misinterpretation of the McCrossin Subcontract. (*Id*.) The alleged misinterpreted provision provides:

> EXTRA WORK AND CHANGES: The Contractor may, at any time, by written order, and without notice to the Sureties, if any, make changes in the drawings or specifications of this Subcontract if within its general scope. If changes cause an increase or decrease in the Subcontractor's cost of or time required for performance for this Subcontract, an equitable adjustment shall be made and the Subcontract modified in writing accordingly. Any claim of the Subcontractor for adjustment under this clause must be presented to the Contractor in the same manner as provided in the general contract for like claims of the Contractor upon the Owner, and in such time as will reasonably enable the Contractor to present such claims to the Owner for payment or recognition. If the parties fail to agree upon the equitable adjustment to be made and the claim for such equitable adjustment involves the Owner, the final determination of such amount shall be determined in accordance and to the same extent that the Contractor is bound to the Owner. Nothing provided in this clause shall excuse the Subcontractor from proceeding with the prosecution of the work as changed. If the Owner requests quotations on a possible future change, then the Subcontractor must furnish to the Contractor a quotation covering the changed work within ten (10) days of receipt of the request or the items will be priced unilaterally by the Contractor and will not be subject to further negotiation.

(*Id*. at 12.)

According to McCrossin, the Panel wrongfully interpreted the provision as requiring it to submit a claim for the rejected caisson. (*Id*.) Instead, McCrossin maintains that this clause applies only when changes cause an increase in the subcontractor's costs of or time required for performance. (*Id*.) As such, McCrossin claims that because it did not incur additional costs, it had no obligation to submit a claim. (*Id*.)

The Supreme Court has held that "the arbitrator's award settling a dispute with respect to

the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworks Intern. Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). However, "as long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id*. (emphasis added). The Fourth Circuit has followed that lead, noting that "an arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has misread the contract," rather it "fails to draw its essence from the agreement only when the result is not rationally inferable from the contract." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006). (quotations omitted).

Here, nothing about the process indicates that the Panel based its decision upon anything other than what was permitted by the agreement. The language within the Extra Work and Changes provision does not preclude the Panel's interpretation, which reflects a reasonable reading of the text. Moreover, there are additional provisions within the contract that support the Panel's interpretation. For example, under Specification 105.17, "[i]f additional compensation is considered due for work or material not covered in the Contract, written notification of the intent to make a claim under Subsection 104.9, shall be given to the Engineer before beginning or continuing affected work." (ECF No. 150 at 17–18.) Accordingly, the claim process requires: (1) detailed factual statement of the claim; (2) dates of action resulting in the claim; (3) a notice of potential claim; (4) the provisions in the contract supporting the claim; (5) identification of pertinent documents supporting the claim; (6) a statement for additional compensation or time; and (7) the amount of compensation requested. (*Id*.) Thus, the Panel correctly found that

McCrossin never made this claim.

Ultimately, McCrossin was required to submit timely and complete work, which they failed to do. (*See id*. at 19.) Whether or not the DOH wrongfully rejected the caisson is immaterial. McCrossin was required to either prove the work was truly acceptable or follow the contract on the next steps. According to the Panel, McCrossin's failure to do so damaged Kanawha Stone. The Court is not in the position to second guess that finding, and regardless, it is no reason to vacate. *See Misco* 484 U.S. at 30 ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his … contract interpretations[.]")

Lastly, the Panel had the ability to use their own sense of justice to a certain extent. Under the procedures employed in accordance with the Arbitration Agreement, the AAA Construction Rules, the Panel "may grant any remedy or relief that the arbitrator deems just and equitable within the scope of the agreement." AAA Construction Industry Arbitration Rules R-49. So, even though the construction of the arbitration agreement may not mirror the arbitrator's sense of justice, the actual agreement enables the Panel to act on its own sense of justice for a claim properly before it. There is no dispute that McCrossin's liability was properly before the panel. Whether McCrossin likes the result is inconsequential, since it is ultimately the bargain they got for agreeing to arbitration under these procedures.[1]

## B. *Liquidated Damages*

---

[1] McCrossin also claims that the panel "unilaterally inserted" the issue of failure to submit a claim into the arbitration agreement. (ECF No. 147 at 20.) However, the claim for liability was properly before the panel. Whether that is raised by Kanawha Stone or the arbitrator, it was still an issue on a valid claim. McCrossin fails to cite to any caselaw that supports the proposition that raising a way to resolve an issue sua sponte is grounds to vacate under 9 U.S.C. § 10(4).

Second, McCrossin asserts that the Panel lacked sufficient evidentiary support in its allocation of liquidated damages against it at a 50/50 split between it and DLB Enterprises. (ECF No. 147 at 21.) For support, McCrossin argues Kanawha Stone, "the party with the burden of proof in seeking to recover against McCrossin, presented no evidence of how McCrossin delayed the critical path of the project., and the Panel had no 'foundation' to conclude any delay liability against McCrossin." (*Id*. at 22.) This stems from the Panel's determination that Kanawha Stone's scheduling expert failed to perform a full critical path analysis to determine how the parties contributed to any delaying events on the project. (*Id*. at 3.)

Kanawha Stone responds that DLB Enterprises also submitted an expert who performed a critical path assessment. (ECF No. 150 at 18–19.) DLB Enterprises' expert testified that the project's critical path shifted to Bridge 84, based on the amount of delay associated with the caisson at issue. (*Id*. at 19.) The Panel ultimately found this testimony more persuasive. (*Id*.) The Panel cited this testimony as evidence of the critical path analysis and supported a finding that McCrossin was equally liable for the liquidated damages. (*Id*.) McCrossin, on the other hand, presented no expert to dispute the critical path analysis. (*Id*.)

The Court is not inclined to deviate from the Panel's reasoning. When reviewing the arbitration award, the Court is "bound by the facts as found by the arbitrator." *Octagon, Inc. v. Richards*, 2010 WL 3932272, at *1 (E.D. Va. Oct. 5, 2010). ". . . [A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *United Paperworks Intern. Union*, 484 U.S. at 38.

Here, the Panel clearly relied on expert evidence to support their findings of fact. (ECF No. 150 at 19.) The Panel did its job, and the Court will refrain from discerning whether it would

9

have done it differently. "Above all, we must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). McCrossin has not made a sufficient showing that the Court should take the drastic step of overturning this arbitration award.

### IV. CONCLUSION

Because none of the rationales for vacating an arbitration award are present, the Court has no choice but to **DENY** McCrossin's motion, (ECF No. 147), and **GRANT** Kanawha Stone's motion to confirm the award, (ECF No. 145.).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 2, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE